The CHIEF JUSTICE
 

 delivered the opinion of the court.
 

 The Baigorry and cargo w§re owned by residents of New Orleans, claiming to be subjects of Great Britain and France. She was employed in the trade of the enemy, plying between Havana and ports of Louisiana, and finding entrance as she could, by running the blockade. The cotton with which she was laden was shipped, according to the testimony of the mate, at Calcasieu Pass, between the 27th of April and the 3d of May; but she did not sail, if the master be credited, till the 26th of May. Calcasieu Pass, and all the neighbor
 
 *480
 
 ing region was in possession of the rebels, and the establishment of the blockade was well known to the officers of the schooner. The master says that he saw no blockading vessels off Calcasieu when he went in or when he came out. The mate, in answer to the same interrogatory, says nothing of what he saw when the schooner entered the Pass, but asserts that he saw no blockador when he came out. But the master says also, that he saw blockading ships as he was going towards the coast of Louisiana in February, and also, saw a steamer - passing along the coast, while the schooner was at Calcasieu. The mate says he saw steamships — not One, but several — off’ the coast during the same time. It is also in evidence, that when the master of the Baigorry saw the Bainbridge, on the afternoon before the capture, and that she was hove to and waiting for him, he changed his course to avoid her.
 

 We
 
 have already held, that a blockade once established, and duly notified, must be presumed to continue until notice of discontinuance, in the absence of positive proof of discontinuance by other evidence; and we do not think that the testimony of the master and mate that they saw no blockaders when entering or leaving Calcasieu Pass, supplies such ■proof. On the contrary, we think that positive proof that the blockade was not discontinued, is made by the admissions that blockaders were seen when the Baigorry approached the coast, and that one or more steamships were seen off the coast while she lay within Calcasieu Pass.
 

 No attempt is made to account for her delay in sailing-, from the 8d to the 26th of May, alter her cargo was on boardand the absence of any explanation of this circumstance, warrants the inference that she was watching her opportunity to get out without being seized. It- goes to establish guilty intent. So, too, the endeavor to escape from the Bainbridge. No such attempt would have been’made, had the officers of the Baigorry been unconscious of any infringement of the blockade.
 

 The proof of violation of the blockade, and of its existence
 
 *481
 
 both when the schooner entered and when she left Calcasieu Pass, is clear.
 

 We think, also, that both ship and cargo were rightly condemned by the District Court as enemies’ property. It is claimed that both belonged to neutrals resident in New Orleans, and entitled to protection under proclamation,
 
 *
 
 and the proof, to some extent, supports this claim; but both were liable to be condemned as enemies’ property, because of the employment of the vessel in enemies’ trade, and because of the attempt to violate the blockade, and to elude visitation and search' by the Bainbridge. On this latter point, the language of Chief Justice Marshall, in
 
 Maley
 
 v.
 
 Shattuck,
 

 †
 

 is express.
 

 Decree aeeirmed.
 

 *
 

 The Venice,
 
 supra,
 
 135.
 

 †
 

 3 Cranch, 488.